IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PREMIUM PAYMENT PLAN,
        Plaintiff,

v.

SHANNON CAB CO. T/A GOLDEN LIMO SERVICES A/T/A LUXURY LIMO,
        Defendants.

Civil Action No. 04-4669

**MEMORANDUM**

June 14, 2010                                                                                                                                                                Pollak, J.

Plaintiff, Premium Payment Plan (PPP), a New Jersey corporation with its principal place of business in New York, brings a diversity contract action against defendant, Shannon Cab, Co., a Pennsylvania corporation with its principal place of business in Pennsylvania. Am. Compl. ¶ 1-4. During discovery, plaintiff moved to disqualify Willan Franklyn Joseph as counsel for the defendant (docket no. 44) and to depose Joseph (docket no. 53). Defendant responded to both motions (docket nos. 48 & 58). Magistrate Judge Angell granted both motions and ordered the defendant to find

1

new counsel (docket no. 63). Defendant appealed Judge Angell's order to this court[1] (docket no. 64) and plaintiff responded (docket no. 65). The order was stayed pending my review of the order (docket no. 66). This appeal is now ripe for disposition.

**I.      Background**

Plaintiff, PPP, alleges that Michael Gardner[2] of Gardner Financial Services, served as the agent of the defendant, Shannon Cab, in obtaining an insurance policy through Prime Syndicate, an insurer. Am. Compl. 5-7. The defendant, through Gardner, is alleged to have contracted with plaintiff, PPP, to borrow money in order to finance payment of insurance premiums that were owed to Prime. Am. Compl. ¶ 8-10. Defendant agreed to pay PPP nine payments totaling over $142,000. Am. Compl. ¶ 10. Plaintiff alleges that Willan Franklyn Joseph, counsel for defendant, ratified the contract by making claims against the insurance policy. Am. Compl. ¶ 11. Defendant is alleged to have made only two of the nine payments, and owes PPP the balance of the payment plus late fees, interest, and attorney's fees as provided for in the contract. Am. Compl. ¶ 13-18. Plaintiff sought to depose Joseph and to disqualify Joseph as counsel because he may

---

[1] Plaintiff argues that the appeal was not properly taken and cites 28 U.S.C. § 1292(b). However § 1292(b) governs interlocutory appeals by permission from a district court. I may review any nondispositive order of a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Federal Rule of Civil Procedure 72 specifies that an objection to such an order must be made within fourteen days. Fed. R. Civ. P. 72(a). Defendant made a timely objection and thus I review the order.

[2] Gardner is not joined as a defendant in the present action.

2

be a witness at trial. Magistrate Judge Angell granted both these requests.

**II.     Analysis**

Any material that is relevant to the subject matter involved in the action is discoverable as long as it is not privileged. Fed. R. Civ. P. 26(b)(1). This court is empowered, however, to issue an order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense," if there is good cause to issue such an order. Fed. R. Civ. P. 26(c). "In this circuit, the party seeking the protective order bears the burden of showing that it is particularly needed to obviate a significant harm; broad allegations of harm will not suffice." *Frazier v. Southeastern Pennsylvania Transp. Authority*, 161 F.R.D. 309, 313 (E.D. Pa. 1995).

"The fact that the proposed deponent is an attorney for one of the parties in the case is clearly not enough, by itself, to justify granting in full the motion for a protective order." *Frazier*, 161 F.R.D. at 313; *see also Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990) ("There is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information."). However, given the importance of a party having access to counsel of its choosing, a party can obtain a protective order to shield its attorney from deposition if it shows "undue burden or oppression measured by (1) the extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns; (2) the availability of the information from other sources,

viewed with an eye toward avoiding cumulative or duplicative discovery; and (3) the harm to the party's representational rights resulting from the attorney's deposition." *Frazier*, 161 F.R.D. at 313 (citing *Johnston*, 130 F.R.D. at 353).

In regard to the first factor, the extent to which the proposed deposition promises to focus on central factual issues, I am persuaded that the deposition of defense counsel, Willan Franklyn Joseph, would focus on central factual issues. The central issue in this case is whether the defendant breached a contract with the plaintiff to finance payment of the defendant's automobile insurance premiums on the taxi cabs used by the defendant. The defendant describes the "sole question" as "whether the defendant obtained financing from the [p]laintiff to buy insurance coverage." *Appeal of Defendant Shannon Cab Co. from the Magistrate Judge's Order Filed on Oct. 31, 2009* at 1. Such financing, if it was obtained, would have been obtained by Michael Gardner of Gardner Financial Services, acting as an agent of the defendant. *Id.* at 2. What arrangements the defendant had made with Michael Gardner and what it knew of Gardner's activities are thus key to whether a contract was created and breached.

At several points during her deposition Genoveva Valle, the president and sole shareholder of the defendant, stated that she left payment of insurance premiums and maintenance of insurance records to her attorney, Willan Franklyn Joseph. *Deposition of Genoveva Valle*, at 18-19, 50, 51, 52, 53, 54, 55. Valle responded "Yes" when asked if Joseph was involved in running her business. *Id.* at 18. She also said he "keeps my

4

records with insurance." *Id*. at 19. She did not even appear to know the name of the insurance company involved. *Id*. at 32-33. Later in the deposition, when asked again who has her insurance records from 2004, she responded "Who has my insurance? My Attorney" and that "[A]ll my documents my attorney has them. And he has them because of what Michael [Etamad, her former insurance broker, prior to Michael Gardner] did to me. So, when Michael [Etamad] did that to me, I gave all the documents to him, because that's what the brokers do." *Id.* at 50-51. Joseph also paid the insurance premiums for her. *Id*. at 52-53. She testified Joseph would keep the receipts for her when she paid the premiums with cash. *Id* at 54.

Joseph contradicted Valle's account of events while acting as counsel at her deposition. Joseph tried to clarify during the deposition that Valle was confused and he had only paid bills for her on a few occasions because he was worried about her carrying around too much cash. *Id.* at 53. Joseph also stated during the Valle deposition that he would ask Gardner for receipts on behalf of Valle. *Id.* at 54.

The testimony of Valle indicates that she not only relied on Joseph for legal advice but also for help with the day-to-day business transactions with her insurance broker, Michael Gardner. In fact, she appears to have largely delegated the responsibility to Joseph, after being defrauded, as she perceived it, by her prior insurance broker, Michael Etamad. Given the close involvement that Joseph had in the business dealings between Gardner and Valle, his testimony may be critical in determining whether Gardner was

5

given authority to contract with the plaintiff, and whether the defendant was aware of the actions of Gardner or ratified them.

Where, as here, substantial questions arise as to whether the attorney was giving legal or business advice, the better course is to allow the deposition in order to establish the character of the involvement and whether invocation of the attorney-client privilege is supported. *See Kaiser v. Mutual Life Ins. Co. of New York*, 161 F.R.D. 378, 382 (S.D. Ind. 1994) ("[I]f an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness."); *Aamco Transmissions, Inc. v. Baker*, No. 06-cv-5252, 2008 WL 509220, at *3 (E.D. Pa. Feb 25, 2008) (Report & Recommendation) (noting that a deposition may be appropriate even if the attorney may not be a necessary witness at trial).

Regarding the second factor–the availability of information from other sources–the defendant claims that the information sought is available from other sources. However, the burden is not on the plaintiff to show the information is unavailable elsewhere, rather, the party seeking the protective order must "show that the information is so readily available from other sources that an order compelling [counsel's] deposition would be oppressive." *Frazier*, 161 F.R.D. at 313-14. When examining whether the proposed deposition would be cumulative or duplicative, courts have looked at both the evidence that the party seeking the deposition had at the time of the request, and at whether other sources of similar evidence were available. Here neither the evidence the plaintiff

currently possesses nor the available sources of evidence can approximate the very possibly extensive knowledge Joseph has of the defendant's business dealings.

With regard to the evidence already possessed by PPP, it does posses some of the documents regarding the insurance coverage but it lacks information regarding whether other documents exist and whether the defendant's representatives were aware of a contract with the plaintiff. The plaintiff did question Valle regarding much of the information sought from Joseph and she repeatedly stated that Joseph kept all her insurance records and Joseph had her receipts.

There also does not appear to be a readily available source of information other than Joseph. The one other person likely to be aware of the dealings between the defendant, Shannon Cab, and Michael Gardner, would be Gardner himself. During the Valle deposition, Joseph stated that Gardner's business was "defunct" and Gardner was under investigation by the FBI and U.S. Postal Service for fraud. *Valle Depo.* at 22. The fact that plaintiff could potentially get information from someone whom defense counsel represented as being under investigation for fraudulent conduct does not make the information reasonably available.

The third factor–the asserted harm to Shannon Cab's representational right–does not create an "undue burden or oppression" in light of Joseph's allegedly central role in the underlying transactions. Allowing the deposition of Joseph may, later in this litigation, require his withdrawal as counsel. *See* Pennsylvania Rule of Professional

7

Conduct 3.7(a). However, in my judgment, the question whether Joseph should be disqualified as counsel need not be determined now. The issue that needs to be determined now is whether Joesph is to be deposed. I conclude that he is subject to being deposed. There are serious questions as to whether and to what extent Joseph went beyond the role of legal counsel and gave business advice to Valle and Shannon Cab. The amended complaint alleges that he, as an agent of Shannon Cab, ratified the disputed contract. Am. Compl. ¶ 11. "Where a lawyer provides non-legal business advice, the communication is not privileged." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). While Shannon Cab may be seriously inconvenienced by Joseph's eventual disqualification as counsel, Shannon Cab's representational rights are not damaged by discovery of the content of any non-legal communications.

While the deposition of Shannon Cab's attorney–in the context of the possibility that the attorney may at a later date be disqualified from further representation of Shannon Cab in this litigation–may constituted a burden on Shannon Cab, the burden would not be "undue" in light of the facts discussed during the deposition of Valle. Valle repeatedly claimed a lack of knowledge about the transactions underlying this case because, according to her, Joseph handled all her insurance matters. The fact that Joseph contradicted Valle's version of facts when acting as counsel during her deposition highlights the untenablility of allowing Joseph to avoid being deposed because he is serving as counsel.

While I agree that Joseph can be deposed, I modify the order in one respect. Pennsylvania Rule of Professional Conduct 3.7(a) states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

The defendant argues that plaintiff has failed to show that Joseph should be disqualified as counsel. I need not currently decide whether Joseph is likely to be a necessary witness or whether any of the exceptions of Rule 3.7(a) apply. By the language of the rule, Joseph is only barred from being an "advocate at trial." Thus, he can "participate in all pre-trial and post-trial matters." *Caplan v. Braverman*, 876 F. Supp. 710, 711 (E.D. Pa. 1995). Joseph need not be disqualified at this time. Following his deposition and completion of discovery, the parties and the court will be better able to address the question whether Joseph is "likely to be a necessary witness," which would disqualify him from serving as trial counsel. *See id.* ("Waiting until discovery is completed on this issue is the best course to resolve this potential conflict.").

### III. Conclusion

For the reasons stated above, Judge Angell's order is affirmed in part, and modified in part, in accordance with the order that accompanies this memorandum.